IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

```
UNITED STATES OF AMERICA :   CRIMINAL ACTION
                          :   14-CR-110-1
            Plaintiff     :
      vs.                 :   Philadelphia, Pennsylvania
                          :        September 29, 2014
CHRISTOPHER STEELE,       :
a/k/a "Mike Dozer         :
                          :   JURY TRIAL - DAY I
            Defendant     :
```
- - - - - - - - - - - - - - - - - - - - - - - - - - -

- - -

BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT JUDGE
and a Jury

- - -

APPEARANCES:

For the Government:     MICHELLE ROTELLA, ESQUIRE
                        UNITED STATES ATTORNEY'S OFFICE
                        615 Chestnut Street, Suite 1250
                        Philadelphia, Pennsylvania  19106


For the Defendant:      KEVIN MARK WRAY, ESQUIRE
                        200 West Front Street
                        Media, Pennsylvania  19063


ALSO PRESENT:           Paul Lombardi
                        Jury Administrator

                        - - -

Deputy Clerk:           Stacy Wertz

ESR Operator:           Patrick Kelly

TRANSCRIBED BY:     Drummond Transcription Service
                    Haddon Heights, New Jersey  08035

    Proceedings recorded by electronic sound recording,
transcript produced by computer-aided transcription
service.

```
 1                    (At 9:41 a.m. in Courtroom 11a.)

 2                    ESR OPERATOR:  All rise.

 3                    Count is now in session, the Honorable Juan R. Sanchez

 4      presiding.

 5                    THE COURT:  All right.  You may be seated.

 6                    MS. ROTELLA:  Good morning, your Honor.

 7                    (Pause.)

 8                    THE COURT:  Okay.  Very well.

 9                    A couple of things that I think we need to discuss.

10                    Number one is the motion in limine that was just filed

11      in this case.  Counsel, I'm going to address that very quickly.

12                    And secondly, I think that we need to talk a little

13      bit about jury selection.

14                    And third, we need to talk a little bit about the

15      Federal Detention policy with regards to clothing.  I am going

16      to encourage you to take a look, read the policy and follow

17      their policy, okay.

18                    I am not going to be delaying at trial -- and we're

19      already delayed forty -- forty minutes.  We were supposed to

20      start promptly at 9:00.  So, please follow the policies and read

21      them very carefully.  I believe, they're posted, number one.

22                    Going backwards, with regards to jury selection, my

23      understanding is that your client wishes to participate in jury

24      sel -- in -- in the drawing of the panel?

25                    MR. WRAY:  Yes.
```

1          THE COURT:  All right.

2          It's going to take thirty nanoseconds for him to

3   participate, we are going to do it in this courtroom.  We have

4   the technology and it's just how to draw the numbers.  So, it's

5   going to be done right here in the courtroom, because he's in

6   custody.

7          Number three -- number -- No. 1, I will address the

8   motion *in limine* before we get started.  And I think there is

9   also a pending motion for bail.

10         MR. WRAY:  Yes, your Honor.

11         THE COURT:  Okay.

12         I scheduled it, but quite frankly, my understanding is

13  that your client has not posted bail in state court, which is

14  posted at a million dollars, am I correct on that?

15         MR. WRAY:  You are correct, your Honor.

16         THE COURT:  All right.

17         So, while I have listed the case for a bail hearing,

18  I'm going to pass the bail hearing until after the trial,

19  because this trial is going to be over by the end of the week

20  and the verdict may render it moot.

21         MR. WRAY:  Understood.

22         THE COURT:  Okay.  Agree?

23         MS. ROTELLA:  Yes, sir.

24         THE COURT:  In any event, you have a heavy burden to

25  establish that you're entitled to bail.

1           So, it's going to be in about five or ten minutes.  I

2    think the panel should be ready in about five or ten minutes, I

3    think.  So, would you hold on?

4           MR. WRAY:  Sure.

5           THE COURT:  All right.

6           So, tell me, it is your motion?

7           MR. WRAY:  It is, your Honor.

8           THE COURT:  All right.

9           The Third Circuit case law is pretty clear, I think,

10   that a non-expert under Rule 701, can't testify, because all

11   they -- they're doing is taking what is admissible evidence in

12   this case, the records of the cell phone belonging to your

13   client and taking the records that the AT -- MT has produced and

14   mapping them.  They're not expressing any opinion, whatsoever,

15   as to the location or the whereabouts of your client's camp,

16   precisely, indicators -- show a proof of where your client was

17   at that particular date and time.  Right?

18          MR. WRAY:  Ah, to some degree, your Honor, ah --

19          THE COURT:  To some degree?

20          MR. WRAY:  -- ah, first of all, the phone is in the

21   name of Bobby Steele, though it was paid by Bobby Steele, my

22   client to my knowledge, has never admitted that that cell phone

23   belongs to him.

24          If it were to be connected to him and say, this is the

25   phone that you've been using, the Government wishes to map out

1  where the cell-powered locations where ping data was taken.

2         THE COURT:  Right.

3         MR. WRAY:  It -- the --

4         THE COURT:  For that phone, so -- so, if -- if your

5  client claims that he was not using --

6         MR. WRAY:  That --

7         THE COURT:  -- that phone, so you -- could not hear

8  that to the jury, that's -- that has no relevance --

9         MR. WRAY:  I -- could not, your Honor.

10        THE COURT:  -- so, it doesn't mean anything in this

11  case, it doesn't tie your client in to a particular date or

12  time, right?

13        MR. WRAY:  That would be -- make it completely

14  irrelevant.  And if the Court were to consider that relevant,

15  all -- all that data relevant with the ping data, your Honor,

16  cell-phone towers are radio transmitters and the technology is

17  not simply, it goes to closest one.

18        If you'd read me -- the second or third page of my --

19  my motion and argument, a cell phone pings off of the strongest

20  signal at that particular time -- time and place.  And that

21  requires expert testimony that says, we've got all of these

22  pings.

23        Furthermore, the Government is alleging that they have

24  a cell-phone tower going up and back from the location where the

25  victim -- near where the victim -- resides.  When, in fact, all

1 they have is cell-phone tower pings coming from Limerick down

2 into Delaware.  They don't have a trip to the Commonwealth of

3 Pennsylvania.

4    THE COURT:  Okay.

5    So, why can't you establish that cross?

6    MR. WRAY:  I -- I will, your Honor, but I believe it

7 -- to make expert testimony, because the jury is going to make

8 the -- take that leap that this must be evidence --

9    THE COURT:  There's --

10    MR. WRAY:  -- that that -- the phone was there.

11    THE COURT:  -- Third Circuit case law -- you know, I

12 have to follow the Third Circuit case law until they -- they

13 change it.  The Third Circuit case law seems to be very clear,

14 this type of evidence has been admitted because --- under Rule

15 701 -- because it is not the subject matter of expert testimony.

16 They're free to call one, but they don't have to.

17    MR. WRAY:  I -- I believe, that this testimony is

18 going to require a <u>Dalbert</u> hearing, your Honor.  I -- I

19 understand the Court's reasoning and -- and the Court's logic,

20 but I believe that in order to establish that, ping data from a

21 particular cell-phone tower as a cell phone passes it, cell

22 phones have more than twenty -- twenty-square mile radius.  You

23 can't sit there and say, if it pings off of this cell-phone

24 tower, it must be right there on top of it within a certain

25 distance.

1          When the reality is, you can get a cell phone call and

2    -- you've made a cell-phone call and you could ping off of data

3    -- a cell-phone tower -- that's twenty -- more than twenty miles

4    away from you.

5          THE COURT:  Very well.

6          MR. WRAY:  Which would place you far from the crime.

7          THE COURT:  Very well.

8          MR. WRAY:  And then, when I ask -- when I cross-

9    examine, the first thing you're going to say, well, I don't know

10   any of that data.

11         And I -- I believe, it's going to more prejudicial --

12   probative -- because they're gonna make that leap of faith and I

13   think I've made that point in my argument.

14         THE COURT:  Attorney Rotella.

15         MS. ROTELLA:  Well, I think he's --

16         THE COURT:  You don't have an expert, right?

17         MS. ROTELLA:  No, sir, we're -- we're not offering --

18   and -- and the Third Circuit case law -- as your Honor pointed

19   out -- is clear that an expert is not required.

20         We're not asking to have somebody testify as to

21   opinions about pinging off of cell towers.  Certainly, counsel

22   is free to ask those types of questions on cross-examination of

23   the lay witness, the agent that is called to testify here.

24         But what he's going to be testifying about is simply,

25   that he took admissible business records from AT&T, put them in

1   a mapping software program, which the Third Circuit cases have

2   noted are commercially available on Google, on MapQuest.

3          You could take the longitude and the latitude of the

4   data that's provided by AT&T, counsel could have done it,

5   himself, put it in his own mapping program and he could come up

6   with the exact information that the witness is going to testify

7   to.  He is going to show the summary map, it's admissible as --

8   it's admissible under Federal Rule of Evidence 1006 -- one

9   thousand and six -- he's a summary witness, it's --

10         And the Third Circuit in recent decision, 2011, 2012,

11  2013, have discussed this very point, this exact point that he's

12  objecting to and have found it to be admissible.

13         And, in fact, as I noted in a footnote in my response

14  to his motion, this particular witness has testified three times

15  in the Eastern District of Pennsylvania in --

16         THE COURT:  Okay.

17         One time was before me, wasn't it?

18         MS. ROTELLA:  Yes, it was.  Yes.

19         And so, it's been admissible all three times for this

20  very specific and limited purpose.

21         THE COURT:  Right.

22         But on the issue of the reliability of the mapping

23  software, I don't know the technology, but could the mapping

24  software -- in other words, the information he inputs into a

25  software program -- what -- what is the accuracy of that?

1          MS. ROTELLA:  Okay.  Sir --

2          THE COURT:  How has the Court treated that, if you

3     can --

4          MS. ROTELLA:  The Courts have treated it by saying,

5     that these mapping software programs are commercially available

6     for anyone, that they are -- are on the Internet.  This is a

7     particular one, that the FBI uses.  Counsel is free to cross-

8     examine him on it and how -- how frequently that program is

9     updated.  The agent is familiar with the information regarding

10    that specific program.  But it in no way, involves expert

11    testimony -- in no way.

12          And -- and this Circuit has held that that's proper

13    and admissible.

14          THE COURT:  Very well.  Okay.

15          MR. WRAY:  May I reply briefly, before the Court --

16          THE COURT:  Very well.

17          MR. WRAY:  -- with this --

18          THE COURT:  I -- I will reserve ruling on -- on this

19    issue.  I think on other previous occasions, I have allowed a

20    little bit of a -- a mini Dalbert hearing on -- on these issues.

21    I don't know whether I am going to do that or not.

22          MS. ROTELLA:  But, sir --

23          THE COURT:  I -- I think that -- hold on a minute.

24          MS. ROTELLA:  I'm sorry.

25          THE COURT:  I think that the Third Circuit case law is

1    -- is pretty clear, that this is admissible under 701, it's not

2    the subject matter of expert testimony.  I am going to double

3    check the case law, since you just filed this -- this

4    information.  And I will give you my ruling.

5             I don't think you need this before we begin openings,

6    right?

7             MR. WRAY:  No, your Honor.

8             THE COURT:  Do you?

9             MS. ROTELLA:  No, sir.

10            THE COURT:  All right.

11            So, we don't know how long we're going to get today,

12    right?

13            MR. WRAY:  I -- I have -- I have not picked a jury in

14    federal court in some years, your Honor, so --

15            THE COURT:  Well, we have sixty-five.

16            Please no food, no coffee.  Follow my standard

17    operating procedures, I urge you to read them and make sure that

18    everybody, who is on -- on your -- in support of your client

19    adheres to them.

20            So, we'll start as soon as the panel is ready.  I

21    think the panel is ready, Paul?

22            MR. LOMBARDI:  Yes, we're pulling from the courtroom,

23    is that --

24            THE COURT:  Right.

25            MS. ROTELLA:  Sir --

1          MR. LOMBARDI:  So, we would have to set everything up

2     and pull from the courtroom.

3          THE COURT:  Right.

4          So, why don't you come and set it up?

5          MR. WRAY:  Your Honor, potential witnesses do need to

6     sit outside, correct?

7          THE COURT:  Absolutely, for both sides.

8          MR. WRAY:  Bobby, you're going to need to sit outside.

9          THE COURT:  So, anybody who is going to be testifying,

10    could --

11         MR. WRAY:  Bobby, you need to sit outside, 'cause I

12    need to talk to him about -- all right.

13         MS. ROTELLA:  Sir, for the record, I have --

14         THE COURT:  No, we could do it in the open courtroom.

15         (Discussion held off the record.)

16         THE COURT:  Oh, okay.  They don't know.

17         MS. ROTELLA:  I -- in terms of sequestration, your

18    Honor --

19         THE COURT:  We -- excuse me.

20         We have an attorney courtroom outside that they could

21    stay.

22         MR. WRAY:  Briefly, can someone who said that to him

23    or may I briefly, show it to him, where the room is, so he can

24    be comfortable?

25         A VOICE:  All right, absolutely.

1          MR. WRAY:  Thank you very much, young man.

2          THE COURT:  Okay.   Could you set up?

3          Paul, may I see you?

4          (Discussion held off the record at 9:53 a.m.)

5          THE COURT:  Go ahead.

6          MS. ROTELLA:  Your Honor, there is one additional

7     issue, we could address.

8          THE COURT:  Okay.  Did I miss something?

9          MS. ROTELLA:  Well, I don't know that you missed

10    something, because I was just advised last night, I received a

11    notice at ten o'clock Sunday night, the night before the trial

12    is to begin, that counsel intends to now call, a mystery expert

13    witness.  He provided me with his resume last night.  But I have

14    never received a report.

15         Clearly, his time for advising the opposing party,

16    that he intends to call an expert witness, who may or may not

17    change the course of preparation of the Government's witnesses

18    and the presentation of its trial, I -- I would move to prohibit

19    the witness altogether, your Honor, number one.

20         And then, I'm happy to address -- and I have no idea

21    -- he -- he gave a -- a blanket statement, that he may testify

22    in relation to the cell site information.  And to some of the

23    Jack'd cell-phone application evidence that may come in.

24         But I -- I've received nothing else.

25         MR. WRAY:  Your Honor, he's going to be testifying

1    solely to the Jack'd cell-phone application.

2              THE COURT:  Well, who is the witness?

3              MR. WRAY:  His name is Robert Wentz (ph), your Honor.

4              THE COURT:  Do you have a report?

5              MR. WRAY:  I just hired him on late Friday, early

6    Saturday morning to --

7              THE COURT:  So, the answer is, no, he's doesn't have a

8    report?

9              MR. WRAY:  Not as of yet, your Honor.  I just hired

10   him when I --

11             THE COURT:  All right.

12             MR. WRAY:  -- realized what we were going to bring in,

13   regarding cell-phone data.  I realized, we were going to have

14   all kinds of information being given to a jury -- a jury --

15   where they were going to, suddenly, be without an explanation as

16   to what is and is not possible.

17             MS. ROTELLA:  Sir --

18             MR. WRAY:  Ah, he will have a report done promptly

19   before tomorrow morning.

20             But your Honor, the Government told me at the last

21   moment, that they didn't -- weren't going to bring -- expert

22   witnesses to bring in any cell-phone data and that is the only

23   connection --

24             THE COURT:  It's your job to understand the law as to

25   whether or not, if what they intended to present, is admissible

1    or -- or not.

2            MR. WRAY:  Furthermore --

3            MS. ROTELLA:  And --

4            MR. WRAY:  -- furthermore, your Honor, if I may

5    continue --

6            THE COURT:  -- under the -- of the Court and --

7            MR. WRAY:  -- furthermore, if I may continue, your

8    Honor, the person, who owns Jack'd.com had assured me, that he

9    would make himself available to explain how his program worked.

10   Ah, you know, in a rather protracted and testy conversation

11   earlier this week, the owner flat out refused to come in to

12   testify and said, if you subpoena me, I'll bring an army of

13   lawyers.  And insofar as he lived out of state, he had already

14   assured me, he was going to come in.

15           Jonathan Cruchly (ph) owns a number of websites and a

16   number of mobile applications including Jack'd.  He was going to

17   appear in court.  And then, he abruptly -- his lawyer -- called

18   me and said, we are absolutely not going to testify.

19           THE COURT:  So, who is the witness that you intend to

20   call and what are the opinions --

21           MR. WRAY:  Robert West?

22           THE COURT:  Hold on a minute.

23           Who is the witness, what is the opinion?

24           MR. WRAY:  Robert West is simply going to explain, how

25   -- summarize how Jack'd.com works, pursuant to Rule 1006.

1          THE COURT:  Okay.  Would --

2          MS. ROTELLA:  May -- may I, please just address the

3    Court, so there could be -- because he's made very inaccurate

4    statements on this record?

5          THE COURT:  All right.  Go ahead.

6          MS. ROTELLA:  He's -- he's saying that the testimony

7    is limited to how Jack'd.com works.  I want the Court to

8    understand, that he was given discovery in April of 2014.  He

9    has known before that, because his client is charged in state

10   court with the exact -- similar -- offenses, so he's known even

11   before April.  But he certainly knew the Government's discovery

12   since April of 2014.

13         He certainly knows that the Jack'd cell-phone

14   application since April is how his client -- how the Government

15   is saying -- his client met the victim in this case.

16         I'm speaking.

17         MR. WRAY:  Okay.

18         MS. ROTELLA:  So, he has had how many months, how many

19   months to come up with this expert that is limiting his

20   testimony to how Jack'd.com works.

21         And it comes, Sunday night -- 10:00 p.m. -- the day

22   before we start trial to tell me that there is an expert, fails

23   to provide me -- according to -- so, he's violated the Rules of

24   Criminal Discovery, anyway, because he's giving me this late

25   notice of an expert -- fails to give me a report.

1           And then, wants to offer to the Court, some summary of

2   what he may testify to for Jack'd.com, it should be prohibited.

3   He had too much time to prepare this witness to testify about

4   this general subject.  And he failed to do so and this Court

5   should not permit him to do it, on the eve of trial.

6           MR. WRAY:  Your Honor --

7           THE COURT:  Very well.

8           MR. WRAY:  -- the Government is being a bit

9   disingenuous.

10          THE COURT:  Please just -- you know -- you would do a

11  lot better, rather than taking shots at your opponent, you --

12          MR. WRAY:  I just --

13          THE COURT:  -- speak and -- and --

14          MR. WRAY:  -- had a shot taken at me, Judge.

15          THE COURT:  -- hold on a minute.

16          MR. WRAY:  I'll do what you say, I'm sorry.

17          THE COURT:  Listen.

18          MR. WRAY:  I'm sorry.

19          THE COURT:  All right.  Listen first and then, speak.

20          MR. WRAY:  I will.

21          THE COURT:  And we'll get along, right?

22          MR. WRAY:  Yeah.

23          THE COURT:  All right.

24          So, you will do better in this courtroom, if you don't

25  take shots at your opponent and you just deal with the argument.

1          And the argument is, that I should preclude this

2    mystery expert witness on the theory that you have violated the

3    rules, have given the name too late and I suspect, that that

4    would be prejudicial to the Government.

5          So, why don't you address that argument, since you've

6    had the discovery since April, 2014.  And as of June of 2014, I

7    told you that this case was going to be on the list on September

8    29th of 2014.

9          MR. WRAY:  Your Honor, as I said, actually, in my

10   motion regarding the cell-phone tower data, the Government gave

11   me cell-phone tower data, not on June -- July 17th and not a

12   month later, but nearly two months later in a format that I

13   couldn't open.

14         And then, on September 19th, ten days before trial,

15   they gave me an Excel spreadsheet, which was suddenly a readable

16   format.

17         So, the Government has given me plenty of late

18   discovery.  Also, we got a packet of approximately, two hundred

19   pages of -- 240 pages -- of documents on September 5th, that

20   were supplemental data that -- in an abundance of caution I'm

21   sure -- was produced on September 5th via the United States

22   Mail, so I got it a few days later.

23         THE COURT:  All right.

24         MR. WRAY:  So, there has been discovery given late and

25   as it comes in on several occasions here and I'm still trying to

1    put my head around, how AT&T produced data on July 17th and on

2    September 5th, it was sent to me in a zip file, not mailed to me

3    by any means and then come in and sit there and say, all of this

4    is last-minute efforts.  I have received discovery at the last

5    minute --

6              THE COURT:  All right.

7              MR. WRAY:  -- and have to deal with that.

8              Your Honor, I can present -- I believe, I can get the

9    testimony I need from Mr. West, as a lay witness -- my pardon to

10   the Government -- he will not be an expert, he will be a lay

11   witness as to how Jack'd.com -- summarize -- how Jack'd.com op

12   -- runs on a cell phone.

13             THE COURT:  Okay.

14             Attorney Rotella, do you wish to -- I want to get to

15   the jury, so I don't want to spend a whole day picking the jury.

16   So do you want -- anything else, you have to add?

17             MS. ROTELLA:  No, your Honor.

18             THE COURT:  Okay.  Very well.  Paul --

19             MR. LOMBARDI:  Thank you.

20             THE COURT:  -- Mr. Lombardi.

21             MR. LOMBARDI:  Good morning, my name is Paul Lombardi,

22   I am the Jury Administrator.  Can all of you see the juror

23   through windows --

24             MS. ROTELLA:  Hm-hmm.

25             MR. LOMBARDI:  -- on your monitors?

1          MS. ROTELLA:  Yes.

2          MR. WRAY:  Yes.

3          MR. LOMBARDI:  What I am going to do very briefly is

4    just demonstrate how we go about selecting jury panels in this

5    district.

6                                    *  *  *

7          (The *voir dire* of the jury panel is not transcribed at

8    this time from 10:01 a.m. until 11:32 a.m.)

9                                    *  *  *

10         (At 2:46 p.m. in open court.)

11         DEPUTY CLERK:  When I call your name, take a seat,

12   beginning with the first row in the first seat down at the end.

13         THE COURT:  All the way to the end.

14         DEPUTY CLERK:  Seat No. 1 will be Mary Sipler.

15         Seat No. 2, Wendy Carpani.

16         THE COURT:  Number --

17         DEPUTY CLERK:  Seat No. 3, Elaine Fisher.

18         Seat No. 4, David Lourenco.

19         Seat No. 5, Michael Kingcaid.

20         Seat No. 6, Katherine Dymond.

21         And Seat No. 7, we'll start in the second row down at

22   the end.  Seat No. 7, Kenneth Baker.

23         Seat No. 8, Tracy Carroll.

24         THE COURT:  The second row.

25         DEPUTY CLERK:  Seat No. 9, Patrick Turner.

1          Seat No. 10, Tammy Copes.

2          Seat No. 11, Paul Schweitzer.

3          Seat No. 12, Matt Krykew.

4          And No. 13, we'll take the next open seat in the first

5     row, George -- George Keiser.

6          THE COURT:  The front row.

7          DEPUTY CLERK:  No. 14 will go in the back row.

8          THE COURT:  Yes.

9          DEPUTY CLERK:  Lynn Heisel.

10          And No. 15, will take the last seat in the first row,

11    Marc Farinas.

12          THE COURT:  Front.

13          DEPUTY CLERK:  Oh, no --

14          THE COURT:  I'm sorry.

15          DEPUTY CLERK:  -- you take the back row.

16          THE COURT:  You take the back row and he takes -- he

17    takes the front.  You are the second alternate.  Very well.

18          Members of the jury, at this point, let me thank you

19    for being good enough to agree to participate as members of the

20    trial panel to participate in jury selection.  I hope that the

21    experience you've had in my courtroom -- although a very brief

22    one -- was a positive one, allowing you an opportunity to see

23    how we go about selecting criminal juries in the Eastern

24    District of Pennsylvania.  And I hope, at least, the next time

25    that they ask you for the judge's name, that you will remember.

1    Again at this point in time, I am going to excuse me

2  and you are directed to go back to the jury lounge for further

3  instructions, regarding your service.  So, again, thank you very

4  much for making yourselves available and we will leave the

5  courtroom in an orderly fashion, first row first.

6    And as you leave, give your number to my Deputy, Ms.

7  Wertz, who will collect them.  And the members of the jury, pass

8  them to the end and then, forward and she will collect them.

9    So, pass them to Juror No. 1 -- well, it doesn't

10  matter -- Juror No. 1 and Juror No. 7 and Juror No. 7 passed it

11  forward to Juror No. 1.

12    All right, you could put them on there.  You don't

13  have to worry about whether they're in order or not.  You could

14  move your chairs.

15    (Pause at 2:50 p.m.)

16    THE COURT:  Okay.  Stacy, do you have -- all right.

17    Members of the jury panel, we're going to take a

18  fifteen-minute break.  But remember the instructions that I gave

19  you before the break, you are not to talk to each other about

20  the process of jury selection, any of the questions that were

21  posed to you or your responses.  Don't talk about this case or

22  any -- of the issues -- relating to this case at all with each

23  other.

24    And when I come back in fifteen minutes, I am going to

25  give you the preliminary instructions of the Court.  And we will

1  see whether we'd have time for the opening statements or not,

2  I'll take to the lawyers to see whether we are ready to begin

3  with the opening statements at that time, depending on time.

4  And I will give you the schedule for the balance of the week.

5           So, we'll take a fifteen-minute break.  My Deputy,

6  Nancy -- Stacy Wertz -- Stacy Wertz -- will take you to the jury

7  room and distribute to you, the badges that you have to wear

8  while you are in the courthouse as an indication to people, that

9  you have been selected and that you are serving as a member of

10 the trial jury in this case.

11          So, I will see you in about fifteen minutes.  And at

12 that point in time, I will administer the oath -- I'm not going

13 to do it right now -- and we'll get started with the case.

14 Okay.  Thank you, you may rise.

15          Front row, first, go -- follow Ms. Wertz and then, the

16 second row.

17          (Jury out for a brief recess at 2:52 p.m.)

18          THE COURT:  Okay.  I'll talk to -- Counsel, I am going

19 to speak to Juror No. 19, I kept her here, because I wanted to

20 find out, what her excuse was for not serving on this panel and

21 I'll talk to her.

22          I don't know whether you have any idea, whether we'd

23 fine her, put her in jail or scold her or keep her here for the

24 balance of this trial.  So, I haven't decided.

25          But in any event, I will do that and then, I will get

1    back here in fifteen minutes.

2            I am going to give them the instructions of the Court,

3    which takes about a half an hour.  So, we should be about 3:30,

4    3:35.

5            Let me ask, are you in a position to open today?

6            MS. ROTELLA:  Yes, sir.

7            THE COURT:  All right.

8            So, we'll do the opening statements.  How long is the

9    Government?

10           MS. ROTELLA:  About fifteen minutes.

11           THE COURT:  The defense?

12           MR. WRAY:  Fifteen, twenty minutes, Judge.

13           THE COURT:  All right.

14           So, basically, we'll go up to 5:00, I think we could

15   take the balance of the -- of the day.  And then, we'll start

16   testimony tomorrow?

17           MS. ROTELLA:  Okay.

18           THE COURT:  Or do you have a witness here, that you

19   could put on?

20           MS. ROTELLA:  I do.

21           THE COURT:  It's up to you.

22           MS. ROTELLA:  I'm not sure, if -- if we'll finish with

23   him, I don't -- I would rather not leave in the middle of his

24   testimony.

25           THE COURT:  So, so, I'm -- I'm okay -- I'm flexible

1 enough to tell you, that we'll do openings and bring the witness

2 back tomorrow.

3    But if you have a witness that you want to put on, let

4 me know and -- and like I said, I will go to five o'clock.

5    MS. ROTELLA:  Okay.

6    THE COURT:  All right?

7    MS. ROTELLA:  Thank you.

8    THE COURT:  All right.  Thank you very much.  I'll

9 leave it --

10    MR. WRAY:  Your -- your Honor --

11    THE COURT:  Yes -- back in the jury room, yes.

12    MR. WRAY:  Your Honor, you asked what my opinion was

13 -- about Mr. -- and you -- unless it's a really good excuse, I

14 would respectfully request the Court to call, Juror 19 and make

15 him sit through this entire trial now.

16    THE COURT:  Well, I'll -- I'll --

17    MR. WRAY:  You asked our -- you asked, what my opinion

18 was, Judge, and I wanted to give it to you --

19    THE COURT:  I --

20    MR. WRAY:  -- I don't like --

21    THE COURT:  -- I appreciate --

22    MR. WRAY:  -- people who evade jury service.

23    THE COURT:  -- I appreciate your -- your opinion.

24 We'll find out.  I'll let you know what I am going to do.  I'm

25 going to speak to her.  All right.

1          Let me see you.

2          DEPUTY CLERK:  All rise.

3          (Brief recess is held at 2:54 p.m.)

4          (Resumed in open court at 3:14 p.m.)

5          THE COURT:  Hold, okay.

6          Attorney Rotella, I am going to hold the panel --

7  could you close the door -- is there anything you need to bring

8  to my attention?  We could do it at side bar or we could do it

9  in open court, since the jury is still in the jury room.

10          MS. ROTELLA:  Sir, I just -- the argument that we had

11  this morning on that other expert witness, that I was told about

12  last night, which he's now said, is not an expert witness, I --

13  I -- I don't know that we have addressed all of the issues

14  surrounding that.  And my concern was, what was going to be

15  mentioned in defendant's opening, regarding that potential

16  witness.

17          THE COURT:  All right.

18          Let me ask, did you -- you don't need to get into that

19  in your opening, do you?

20          MR. WRAY:  Absolutely not.

21          THE COURT:  Very well.

22          So, I am going to instruct them not to get into those

23  areas, specifically, until I've had an opportunity to rule on

24  it.  All right?  So, you understand that, right?

25          MR. WRAY:  Absolutely.

1          THE COURT:  Okay.

2          It that acceptable to the Government?

3          MS. ROTELLA:  It is, your Honor, thank you.

4          THE COURT:  All right.  Very well.

5          (Jury in at 3:16 p.m.)

6          THE COURT:  Remain standing.

7          DEPUTY CLERK:  Please -- please raise your right

8     hands.

9          (Jury Sworn.)

10         THE COURT:  Very well.  You may be seated.

11              PRELIMINARY INSTRUCTIONS OF THE COURT

12         THE COURT:  Members of the jury, good afternoon.

13         THE JURY:  Good afternoon, your Honor.

14         THE COURT:  Let me tell you a little bit about what

15    your role is going to be during the course of the trial as

16    jurors.

17         Under our system of justice, the role of the jury is

18    to find the facts of the case, based on the evidence that you

19    will be seeing and hearing in this courtroom during the next

20    couple of days, from that evidence that will be presented, it is

21    your job to decide, basically, what happened.  And then, take

22    the law that I give you and render judgment in this case.

23         That is, from the evidence that you will see and hear

24    in this courtroom, you will decide what the facts are and apply

25    to those facts, the law that I will give in my final charge

1   during the instructions and that's how you go about reaching a

2   verdict on the charges that have been brought against the

3   defendant in this case.  Whatever your verdict, it must be

4   unanimous, all of you have to agree on it or there will be no

5   verdict.

6           In the jury room, you will discuss this case among

7   yourselves, but ultimately each of you have to make up his or

8   her own mind about the verdict.  Therefore, each of you has a

9   responsibility which you cannot avoid and you should do your

10  very best during the course of the trial to fulfill your

11  responsibility.

12          I play no part in finding the facts in this case, that

13  is your job and your job alone.  You should not take anything

14  that I might say or do during the course of the trial as

15  indicating to you, what I think of the evidence or about what

16  your verdict should be.  My role as the trial judge will be to

17  make whatever legal decisions need to be made during the course

18  of the trial.  And later on at the conclusion of the trial,

19  explain to you, the legal principles that will guide you in

20  rendering judgment in this case.

21          You must apply my instructions about the law, each of

22  the instructions will be very important.  You must not

23  substitute your own notion or opinion about what the law is or

24  ought to be, you just follow the law as I give it to you whether

25  you agree with it or not.  Perform these duties fairly and

1    impartially, do not allow sympathy, prejudice, fear or public

2    opinion to influence you in any way.  You should also not be

3    influenced by any person's race, color, religion, national

4    ancestry, gender, sexual orientation, profession, occupation,

5    celebrity status, economic circumstances or position in life or

6    in the community.

7              And let me discuss with you some basic rules as to how

8    you are to conduct yourself during the course of the trial.

9              First and foremost, your job is to keen an open mind,

10   I think I talked to you a little bit about this earlier.  Do not

11   make up your minds about the verdict until you have heard all of

12   the evidence in this case, until I have given you the

13   instructions as to the applicable law at the end of the trial.

14   And until you have had, really, the opportunity to talk to each

15   other with a view of reaching a verdict during your

16   deliberations in this case.

17             Do not discuss the case among yourselves until the end

18   of the trial when you go back into the jury to -- to deliberate

19   on your verdict.  So, during the trial, you cannot talk to each

20   other about the evidence or the witnesses or the testimony that

21   you have been hearing.

22             And the reason for that is, again, it is your job to

23   give every fellow juror, an opportunity to keep an open mind, so

24   the only way you could do that is by not talking about the

25   witnesses or the trial as the evidence unfolds, that would be

1  highly inappropriate.  The only time that you could talk to each

2  other about the evidence, about the witnesses, about the law is

3  when the case is over and I send you back to the jury room to

4  begin your deliberations.

5           During the trial, of course, you may talk to your

6  fellow jurors about anything else of a personal nature or of

7  common interests, but not under any circumstances are you to

8  talk to them about the testimony, the witnesses or anything

9  relating to the matters raised during the course of the trial.

10           During the trial, you should not speak to any of the

11  parties, any of the lawyers or any of the witnesses called upon

12  to testify during the course of the trial, not even to pass the

13  time of day.  If any lawyer, party or witness does not speak to

14  you, when they see you in the hallway, when they ride with you

15  in the elevator or the like.  And be mindful of the fact that I

16  instruct them to avoid any contact with you, whatsoever, so they

17  should not get in the elevator or try to approach you or walk

18  next to you while they are passing you in the hallway, but if

19  that happens, you should avoid any contact with them as well.

20  Remember, it is because they are not supposed to talk to you or

21  visit with you, either, that could create serious problems for

22  this Court.

23           Do not talk with anyone else or listen to others talk

24  about this case until the trial has ended and you have been

25  discharged as the jurors.

1          I don't control, who comes in -- this is a public

2     building -- a lot of people come in -- in and out -- during the

3     course of the trial, including the press and the media.  So, in

4     order to assure the people that we have in front of us a fair

5     trial, it is incumbent upon you not to talk about the case at

6     any time or not to allow anyone to talk about the case in your

7     presence.  It is important, not only that you do justice in this

8     case but also that you give the appearance of doing justice.

9          If anyone -- and I mean, anyone -- tries to talk to

10    you about the case during the trial, that would be a serious

11    problem for whoever does that.  But you are directed to report

12    it to me through my Courtroom Deputy immediately.  And do not

13    discuss it with your other fellow jurors and I will promptly

14    address it, because as you well know, that could create serious

15    problems for all of us.

16         Do not discuss the case with anyone outside of the

17    courtroom or at home, including your family and friends.  Of

18    course, you may tell your family members or friends, that you

19    have been selected as a member of the trial jury in a criminal

20    case.  And you may even tell them how long the trial is expected

21    to last.  But not under any circumstances, should you tell them,

22    that -- anything else.  You should tell them, that the Judge

23    instructed you not to talk to them any more about the case and

24    that they should not talk to you about it, either.

25         The reason for this is that, sometimes, someone else's

1   thoughts can influence your thinking and your thinking should be

2   influenced only by what you learn while we are altogether in the

3   presence of the Court, the Government and the defense and the

4   parties.

5           I told you earlier and I am going to repeat it again,

6   until the trial is over and you have announced your verdict, do

7   not watch or listen to any television or radio news programs or

8   reports about the case or read any news or Internet stories or

9   articles about the case or about anyone involved with it.

10          Do not use -- this is the -- the age of technology and

11  I am going to caution you, that you should not use a computer,

12  cellular phone, other electronic devices or tools of technology,

13  while in the courtroom or during your deliberations.  I think we

14  collect them and we keep them in the jury room and we'll

15  distribute them to you during the breaks and at the end of the

16  day.  So, make sure that during the breaks, once you come back

17  into the jury room to begin the business of the Court, that they

18  are completely turned off and do not access them.

19          These devices, of course, may be used during breaks or

20  recesses for personal uses, but may not be used to obtain or

21  disclose information about the case to anyone.  You may not

22  communicate with anyone about the case on your cell phones

23  through e-mail, Blackberry, iPhone, text messaging or Twitter

24  through any blog or website, through any Internet chat room or

25  by way of any other social-networking websites, including

1   Google, Facebook, MySpace, Linked-In and YouTube.  You may not

2   use any similar technologies via social media, even if it's not

3   on the list of technology that I just indicated, this could

4   create serious problems with the Court.

5        Also, do not conduct any independent research of your

6   own about any of the matters relating to this case or this type

7   of case.  And what this really means is, for example, that you

8   must not visit the scene, conduct an experiment of your own,

9   consult any reference works or dictionaries or search the

10  Internet, website or blogs for additional information or use a

11  computer, cellular phone or other electronic devices or tools of

12  technology or any other method to obtain information about this

13  case or about this type of case, the parties in this case or

14  anyone involved with this case.

15       Please do not try to find out information about this

16  case from any source outside the confines of this courtroom.

17  You must decide -- I'm going to repeat it -- the only evidence,

18  you really need to decide this case, is the evidence that you

19  will be seeing and hearing in this courtroom from the witnesses,

20  who are subject to examination on both direct and cross-

21  examination, any documents or exhibits or evidence that is

22  presented and admitted in court.  And that is all you need, you

23  should not supplement your knowledge about this case from any

24  other source, because that would be highly inappropriate, since

25  as you could see, the parties would not have an opportunity to

1    challenge it or to subject it to the test of cross-examination.

2              And finally, you should not concern yourself with or

3    consider the possible punishment that might be imposed, if you

4    return a verdict of guilty.  Your job is to decide whether or

5    not on the charges that the Government has brought against the

6    defendant, the Government's evidence proves the charges beyond a

7    reasonable doubt, that is your job.  So, do not concern

8    yourselves with anything else as to what a potential punishment

9    may be.

10             During the course of the trial, it may be necessary

11   for me to talk to the lawyer outside of your hearing.  I think

12   you already saw that a little bit during the course of the -- of

13   the jury selection, where I called jurors to give me responses

14   in private out of the presence of the jury.  This is what we

15   call, side-bar conferences.  If that happens, please be patient.

16             We'd also ask that you advise me through my Deputy, if

17   you are able to hear any of the conversations that I am having

18   at side bar with the lawyers, because the very purpose of those

19   conversations, is to hold these conversations outside of your

20   hearing for proper and important reasons.  Sometimes, I'm trying

21   to understand more fully and more completely, the issues that

22   are raised by the lawyers through objections and responses to

23   objections, that I have not had the opportunity to hear before.

24   And in order to do that, I may have to have those conversations.

25   So, if you are listening in and we usually try to turn on the

1    white noise in the computer system, but if you hear anything,

2    raise your hand and let me know.  So, that my Deputy could take

3    appropriate steps to make sure that we keep those discussions

4    strictly confidential.

5         We are not trying to keep information from you, these

6    conferences, as I just said, are necessary for me to discuss

7    with the lawyers objections to evidence and -- and to, really,

8    make sure that legally relevant and sufficient in -- evidence is

9    admitted in evidence for your consideration in deciding whether

10   or not, the Government has proven the charges beyond a

11   reasonable doubt.

12        I will, of course, do my very best to keep the number

13   and the length of these conferences to a minimum.  However, if I

14   think that the conference will be long, usually, I will call

15   recess and tell you, that I'm in recess for ten or fifteen

16   minutes while I'll deal with the issue.  And if I need a longer

17   period of time, at least, my Deputy will instruct you, that the

18   Judge needs a little bit more additional time.  I'm not applying

19   for an extension of time from you -- from you -- for approval,

20   I'm just keeping you informed.

21        I may not always grant a lawyer's request for a

22   continuance or a conference, because sometimes, I -- I think

23   that it may not be necessary.  But I'd ask that you do not

24   consider my granting or denying a request for a conference by

25   any one of the lawyers as suggesting to you, my opinion of the

1    case or what your verdict should be.

2              You will find that in federal court, note taking is

3    permitted.  And at the end of the trial, please understand that

4    you must make your decision based upon what you remember from

5    what the witness told you or the evidence that was presented.

6    And you will not have a written transcript of the testimony to

7    review.  So, you have to pay close attention as the witnesses

8    are testifying from the witness stand.

9              If you wish, you may take notes to help you remember

10   what the witness tells us.  My Courtroom Deputy will make

11   arrangements at some point in time today -- I don't know if you

12   already have them with you but if you already have them and you

13   have a pen -- so that you could take notes during the course of

14   the trial.  At the end of the day, we will collect the pens and

15   the notepads and we will distribute them to you, again, in the

16   morning.  Under no circumstances are you to remove your -- your

17   notepads and your pens from the courtroom -- your notepads,

18   primarily from the -- from the courtroom or from the jury room.

19             Let me just give you some specific points that I'd ask

20   that you keep in mind, if you do decide to take notes about note

21   taking:

22             One, we permit you to take notes in the federal court,

23   but you are not required to take notes.  You are not required to

24   take them and how many notes you want to take, if any, is

25   entirely up to you.  Please make sure that note taking does not

1   distract you from your job as jurors.  And often, in order for

2   you to make a determination as to whether a witness is being

3   truthful and candid with you, you have to pay close attention to

4   the witness's testimony or how the witness is testifying.  So,

5   you have to listen to all of the testimony of each witness.  And

6   you also need to decide whether and how much to believe each

7   witness.

8          That will require you to watch the witness as the

9   witness appears from the witness stand, how the witness behaves,

10  how the witness and the manner in which the witness testified

11  while he or she is testifying.  So, how and the manner of the

12  testimony is as important as what the witness has said.

13         You cannot write down everything that is said and

14  there is always the fear that a juror will focus so much

15  attention on note taking, that he or she will miss the

16  opportunity to make these important observations.  Remember that

17  note taking is just to help you remember the evidence, your note

18  are memory aids, the are not evidence.  Notes are not a record

19  or a written transcript of the trial.  Whether or not you take

20  notes, you will really need to rely on your own memory of what

21  the witnesses tell you from the witness stand on direct and

22  cross-examination.  Notes are only to assist your memory and you

23  should not be overly influenced by notes.

24         In your deliberations, do not give any more or less

25  weight to the views of a fellow juror, just because that juror

1   did or did not take notes.  Do not assume that just because some

2   -- something is in someone's notes -- that it necessarily took

3   place in court.  It is just as easy to write something down

4   incorrectly as it is to hear it or remember it incorrectly.

5   Note are not entitled to any greater weight than each juror's

6   independent memory of the evidence.

7          And you should rely on your own individual and

8   collective memories when you begin your deliberations in this

9   case and reach your verdict.  You should not take your notes

10  away from court under any circumstances, Ms. Wertz will collect

11  them and she is responsible for making sure that no one looks at

12  your notes.  And immediately after we have finished your

13  deliberations and this case is over and I have accepted your

14  verdict, Ms. Wertz will collect and destroy your notes to

15  protect the secrecy of your deliberations.

16         Members of the jury panel, during the course of the

17  trial in federal court and, at least, in this courtroom, you

18  will note that only the lawyers and I are allowed to ask

19  questions.  You will not be permitted to ask questions of the

20  witnesses.

21         If, however, you are unable to hear or -- a witness or

22  a lawyer -- just because of the manner in which they speak or

23  just because there is something else happening in the courtroom,

24  someone walked in and bang -- the door was not shut behind them

25  or they distracted you momentarily, at that point in time, just

1    raise your hand and let me know that you missed the testimony

2    and we could have the witness repeat it for your benefit.  So,

3    members of the jury, just remember that.

4            Let me just give you sort of a bird's eye view of what

5    is about to happen.

6            Every trial is composed of a number of different

7    stages and the first stage of the trial will be for the lawyers

8    to give you an opening statement.  The Assistant United States

9    Attorney in this case, Ms. Rotella may make an opening statement

10   at the beginning of her case.  And immediately, thereafter,

11   defense counsel, Mr. Wray may make an opening statement after

12   she has made her opening statement.  Or they may postpone to

13   making an opening statement until after the Government finishes

14   its evidence.  A defendant is not required to make an opening

15   statement, so we will wait and see whether they make an opening

16   statement immediately after the Assistant United States

17   Attorney, Michelle Rotella makes her opening statement.

18           But the purpose of an opening statement, simply, is to

19   give you sort of an outline to help you understand what each

20   party expects the evidence to show at the conclusion of the

21   trial.  And what is said in an opening statement is not

22   evidence, itself, only what they expect the evidence will show

23   to you at the conclusion of the trial.

24           After you hear the opening statements and it looks

25   like you're going to be able to hear the opening statements

1    today after I'm done and that's possibly, all we're going to do

2    today, we probably will begin the testimony tomorrow.

3         But after you hear the opening statements, then the

4    Government will begin to present evidence or introduce evidence

5    that it thinks it proves the charges stated in the indictment

6    against the defendant.

7         And the Government will present witnesses and then,

8    conduct what we call, direct examination of the Government

9    witnesses and the defendant, of course, may cross-examine those

10   witness and the Government may also offer exhibits and documents

11   into evidence.

12        The purpose of cross-examination is to pose questions

13   to the witness, so that you, the jury, are in a position to tell

14   whether or not to believe the witness.  And also, to consider

15   evidence that was not brought out on direct examination in

16   weighing the evidence in this case.

17        After the Government has presented its case -- its

18   witnesses, its evidence -- the defendant may present evidence,

19   but the defendant is not required to do so.  And I will tell you

20   this many, many times during the course of the trial, that the

21   Government always has the burden or obligation to prove each and

22   every element of the offenses charged beyond a reasonable doubt.

23        The defendant is presumed to be innocent of the

24   charges brought against him, the law never imposes on a

25   defendant in a criminal case, the burden of proving his

1   innocence by calling any witnesses, producing any exhibits or

2   introducing any evidence.  The burden of proof rests on the

3   Government and that burden is to prove the charges beyond a

4   reasonable doubt.

5          After all of the evidence has been presented, the

6   lawyers will have the opportunity to give you a closing

7   argument.  And the closing arguments are designed to present to

8   you, the parties' theories our what the evidence has shown or

9   not shown and what conclusions may be drawn from the evidence.

10         Again, what is said in a closing argument just like

11  what is said in an opening argument is not evidence in this

12  case.

13         After you hear the closing arguments, I will then give

14  you the final instructions concerning the applicable law that

15  you just apply to the evidence presented during the course of

16  the trial as I am doing now.  And I may also give you

17  instructions on some aspects of the law throughout the trial as

18  well as at the end of the trial.

19         After my final instructions on the law -- one point --

20  any instructions that I give you during the trial and in my

21  final charge, the important thing for you to consider is that

22  all of them taken together will constitute the law that you must

23  follow and apply to the facts in this case as you find them.

24         After my final instructions on the law, you will then

25  retire to the jury room to begin consideration of your verdict

1   and your deliberations are secret, you will not be required to

2   explain your verdict to anyone.  And your verdict must be

3   unanimous, that means that all of you must agree or there will

4   be no verdict.  You must keep your minds open during the trial,

5   do not make up your mind about any of the questions in this case

6   until you have had the opportunity to hear each piece of

7   evidence and all of the law, which you must apply to the

8   evidence.  In other words, until you begin your deliberations in

9   the jury room.

10          Let me give you some guidelines as to what is and what

11  is not evidence and in a few minutes then, you will be in a

12  position to hear the arguments -- the opening statements -- of

13  the lawyers.

14          Remember, I said, you must make your decision in this

15  case, solely on the evidence that you see and hear in this

16  courtroom.  Do not let any rumors, suspicions or anything else

17  that you may see or hear outside of the courtroom influence your

18  decision in any way.

19          The evidence from which you could find the facts will

20  consist of, one, the testimony of the witnesses, who will be

21  testifying from that witness stand under oath before you.

22          Any documents or other things that are received as

23  exhibits in evidence and I admit them and you've had an

24  opportunity to see them and consider them or any fact or

25  testimony that the lawyers stipulate to, that is, that they

1   formally agree that it could be admitted as a proven fact to

2   which there is no contradiction or inference -- contrary

3   inference.  So, that's the source of where -- the sources -- of

4   the evidence from which you could establish what happened in the

5   case.

6           I've already told you, that the opening statements and

7   the closing statements of the lawyers is not evidence.  And

8   questions by the lawyers and questions that I might ask it's not

9   evidence.  You must not assume that a fact is true, merely,

10  because one of the lawyers or I posed the question about it.  It

11  is the witness's answers that are -- or constitute the evidence.

12  Of course, you may need to consider the question to know what

13  the witness means by his or her answer.  For example, if a

14  witness says, yes to a question, without the question, you don't

15  know what the witness is saying, yes to.  So, you would have to

16  consider the question to understand what the witness is,

17  basically, saying.

18          Objections by the lawyers, including objections in

19  which the lawyers state facts or make speeches -- which I do not

20  like or tolerate -- is not evidence.  Any testimony that I

21  strike or tell you to disregard is not evidence.  And anything

22  that you may see or hear about this case, outside of the

23  courtroom is not evidence that you could consider in reaching a

24  verdict in this case, that would be highly inappropriate.

25          You should use your common sense in weighing the

1    evidence, consider it in the light of your everyday experience

2    with people and events and give it whatever weight, you believe

3    the evidence deserves to receive.  If your experience and common

4    sense tells you, that certain evidence, reasonably, leads to a

5    conclusion, you are free to reach the conclusion.

6              Members of the jury, you will see during the course of

7    the trial, that the -- the rules of evidence will control what

8    could be received in evidence.  So, when a lawyer asks a

9    question or offers a piece of evidence or an exhibit -- what we

10   call an exhibit -- into evidence and the other lawyer thinks

11   that that is not permitted under the Federal Rules of Evidence,

12   that lawyer may object.

13             When a lawyer objects, I usually, politely will turn

14   to the lawyer and ask to state grounds and I usually want to

15   hear, just one or two words, that cue me in to what is the basis

16   of the legal objection.  Sometimes, they might refer to a

17   number, 8031 or 8032 or 401 or 402, the numbers mean nothing to

18   you, but they mean something to me, they'll cue me as to what is

19   the basis of the legal objection.  That simply means, that the

20   lawyer is asking me to decide whether the evidence should be

21   allowed under the Federal Rules of Evidence.

22             I'll tell you that a lawyer has the responsibility to

23   their client to make objections when they think that the

24   evidence being offered is being offered -- is improper under the

25   Federal Rules of Evidence and you should not be influenced by

1    the fact that an objection was made nor should you keep a

2    scorecard as to the battle of the objection or who is winning

3    it.

4           You should also not be influenced by my rulings on

5    objections to evidence.  If I overrule an objection, the

6    question may be answered or the exhibit may be received as

7    evidence and you should treat it -- that testimony or exhibit --

8    like any other.

9           Of course, I may allow evidence, testimony or exhibits

10   only for a limited purpose, if I do that, I generally, will give

11   you a particular instruction as to for what purpose you should

12   consider that evidence, if I am asking to give a limiting

13   instruction on a particular piece of evidence or testimony.

14          Now, here is how it works, the lawyer makes an

15   objection, I will ask the lawyer to state the grounds.  The

16   other lawyer will respond.  And then, quickly, I will make a

17   ruling.  My ruling may be, I sustain the objection or I overrule

18   the objection or I may sustain it and ask the lawyer to

19   rephrase.

20          If I sustain an objection, the question will not be

21   answered or the exhibits will not be received as evidence.

22   Whenever, I sustain an objection, you must disregard the

23   question or the exhibit entirely.  Do not think about or guess

24   what the witness might have said in answer to the question.  Do

25   not think about or guess what the exhibit might have shown.

1            And remember that, sometimes, a witness may have

2     already answered before a lawyer objects or before I rule on the

3     objection, if that happens and if I sustain the objection, you

4     should disregard the answer that was -- that was given.

5     Although, usually, I will strike the answer and direct that you

6     disregard it, but if I don't do that, remember, that you are to

7     disregard the answer that was given in response to an objection,

8     that I sustained during the course of the trial.

9            Also, I may order that some testimony or other

10    evidence be stricken or removed from the record and if I do

11    that, I will instruct you to disregard evidence, that means that

12    when you go back to the jury room to decide your verdict, you

13    must not consider that piece of evidence or be influenced in any

14    way by the testimony or other exhibit or other evidence that I

15    told you to disregard.

16           Members of the jury, although the lawyers may call to

17    your attention to certain facts or factual conclusions that they

18    think are important, what the lawyers say is not evidence and it

19    is not binding upon you.  It is your own recollection and

20    interpretation of the evidence that controls your decision in

21    this case.

22           Also, do not assume from anything that I've done or

23    said during the course of the trial, that I have any opinion

24    about the evidence or about what the issue is in this case or --

25    or about what your verdict in this case should be.

1          Every case -- there are two types of evidence that are

2   presented -- in every case, there's direct evidence that an

3   event happened or something happened.  And there is

4   circumstantial evidence from which you could infer the existence

5   of other facts at issue.

6          So, you may use both types of evidence in reaching

7   your verdict, direct evidence simply means evidence which if you

8   accept as credible, directly proves a fact at issue.

9          An example of direct evidence, of course, is when a

10  witness testifies about something the witness knows from his or

11  her own senses, something that the witness has seen, touched,

12  heard, smelled, tasted, that would give you direct evidence.

13         While circumstantial evidence, on the other hand, is

14  evidence which if accepted -- accepted by you -- as credible,

15  indirectly proves a fact at issue.  It is evidence that proves

16  one or more facts from which you, the jury, could find or infer

17  the existence of some other fact or facts at issue.

18         An inference is simply, a deduction or a conclusion

19  that reason, experience and common sense leads you to make from

20  the evidence presented.  An inference is not a suspicion or a

21  guess or a surmise, it is a reasoned, logical decision to find

22  that a disputed fact exists on the basis of another fact that is

23  proven.

24         So, let me give you an example.  Someone walked into

25  this courtroom right now wearing a raincoat and carrying a wet

1    umbrella, that would be circumstantial evidence or indirect

2    evidence from which you find or conclude that it was raining

3    outside.  You would not have to find that it was raining, but

4    you could find on the basis of those proven facts, that it was

5    raining outside.

6            Sometimes, different inferences may be drawn from the

7    same set of circumstances.  The Government on the one hand, may

8    ask you to draw one inference and the defense may ask you to

9    draw another inference.  It is up to you and you alone to decide

10   what inferences you will draw based on all of the evidence

11   presented.  And you should consider all of the evidence that is

12   presented in the trial whether direct or circumstantial.  The

13   law, really, makes no distinction between the weight, that you

14   should give, either, direct or circumstantial evidence.  It's

15   for you to decide how much weight to give any of the evidence

16   whether direct or circumstantial.

17           Members of the jury, we've talked a little bit about

18   your job as jurors and one of your main jobs will be to size up

19   the witnesses as they testify from the witness stand and decide

20   whether or not to -- whether or not to believe all, none or part

21   of what a witness is telling you.

22           So, in deciding what the facts are, you have to decide

23   what the testimony of the witnesses you believe and what

24   testimony you do not believe, because you are the sole judges of

25   the credibility of the witnesses.

1        By credibility, we mean, whether the witness is worthy

2   of your belief?  Is the witness, who is being called to testify

3   being truthful?  Is the witness accurate?  Remember that you are

4   free to believe everything a witness tells you or only part of

5   what a witness tells you or none of it.

6        You may also decide whether to believe a witness based

7   on his or her own behavior or manner while testifying.  The

8   explanation that the witness gives you during the course of the

9   trial and any other -- and all the other evidence -- in this

10  case, just as you would in any important matter, where you are

11  deciding whether a person, who is before you is being truthful,

12  straightforward and accurate in his or her recollection.

13       The decision or the question of credibility refers --

14  in deciding questions of credibility -- remember to use your

15  good common sense and good judgment and your experience as you

16  have lived life.

17       Take a look at a number of factors, such as, the

18  opportunity and ability, the witness had to see or hear about

19  the things about which the witness testified from the witness

20  stand.  The quality of the witness's knowledge, understanding

21  and memory.  How the witness appeared, behaved, while

22  testifying?  Whether the witness has any interest in the outcome

23  of the case or any motive, bias or prejudice?  Any relation the

24  witness may have with a party in the case?  And any effect that

25  the verdict may have on the witness?

1    Whether the witness said or wrote anything before the

2    trial, that is different from the witness's testimony here in

3    open court.  Whether the witness's testimony is consistent with

4    or inconsistent with other evidence that you believe and find

5    credible.  And any other factors that bear upon whether the

6    witness should be believed by you.

7    Now, members of the jury, remember that

8    inconsistencies and even, discrepancies, in a witness's

9    testimony or between the testimony of different witnesses may or

10   may not cause you to disbelieve that witness's testimony.  Two

11   or more people witnessing an event may simply see it or hear it

12   happen differently.  Mistake in recollection, like, failure to

13   recollect is a common human experience.

14   In weighing the effect of an inconsistency, you should

15   consider whether it is about a matter of importance or an

16   insignificant detail.  And you should also consider whether the

17   inconsistency is an innocent one or an intentional one.  You are

18   not required to accept the testimony of a witness, even if that

19   witness's testimony is not contradicted and the witness is not

20   impeached.  You may decide that the testimony is not worthy of

21   your belief, because of the witness's bearing and demeanor or

22   because of the inherent improbability of the testimony or for

23   other reasons that are sufficient to you as members of the trial

24   jury.

25   After you make up your own judgment about whether to

1   believe the witness, then you can attach to that witness's

2   testimony, the significance -- the weight, the importance --

3   that you think that witness's testimony deserves to receive.

4           Remember, that the weight of the evidence to prove a

5   fact does not, necessarily, depend on the number of witnesses

6   who testify.  The reason test of the -- the real important

7   thing, is more than numbers, it's how credible the witness's

8   testimony is or are and how much weight you think their

9   testimony deserves to receive.

10          Members of the jury, the Government in this case

11  charges the defendant, Christopher Steele, with violating

12  federal law, specifically, using an interstate commerce

13  facility, the Internet to entice a minor to engage in sexual

14  conduct.

15          Two, interstate travel with the intent to engage in

16  illicit sexual conduct with a minor.

17          And three, using an interstate commerce facility --

18  the Internet -- to receive child pornography.

19          The charges against Christopher Steele are contained

20  in what we call, an indictment.  An indictment is simply the

21  formal way of specifying the exact crimes the defendant is

22  accused of committing.  An indictment is an accusation only, it

23  is a description of the charges against the defendant.  An

24  indictment is not evidence of anything.  And you should give no

25  weight or any weight to the fact that Mr. Christopher Steele has

1    been indicted in making your decision in this case.

2            The defendant, Christopher Steele is charged in the

3    indictment with committing the offenses of using an interstate

4    commerce facility, interstate travel with the intent to engage

5    in illicit sexual conduct with a minor and using an interstate

6    commerce facility, the Internet, to receive child pornography.

7            To help you follow the evidence, I will give you a

8    brief summary of the elements of the offense, each of which the

9    Government must prove beyond a reasonable doubt in order to

10   convict Mr. Christopher Steele of the offenses charged.  And I

11   will give you further instructions at the conclusion of the

12   trial, that will be more -- more details.

13           But suffice to say, so that you could understand,

14   what's about to happen, that Count 1 of the indictment charges

15   Steele with interstate commerce -- specific -- with using an

16   interstate commerce facility, the Internet, to entice a minor to

17   engage in sexual conduct.  The elements of this offense are:

18           That the defendant did knowingly use a facility and

19   means of interstate and foreign commerce, that is, the Internet.

20           That while -- two -- that while doing so, he knowingly

21   persuaded, induced, enticed or coerced a child under the age of

22   eighteen.

23           Three, to engage in sexual activity.

24           And fourth, for which any person could be charged with

25   a criminal offense.

1          Count 2 of the indictment charges Christopher Steele

2    with interstate travel, with in -- with intent to engage in

3    illicit sexual conduct.  The elements of this offense are:

4          First, that the defendant crossed state lines with the

5    intent to engage in a sexual act with a minor.

6          Two, that the minor had reached the age of twelve

7    years, but had not yet reached the age of sixteen years.

8          And three, that the minor was, at least, four years

9    younger than the defendant.

10          And Count 3 of the indictment charge Christopher

11   Steele with receipt of child pornography.  The elements of that

12   offense, briefly, are:

13          One, that the defendant used any means or facility of

14   interstate or foreign commerce, that is, the Internet, in and

15   affecting interstate or foreign commerce.

16          Two, that he did so knowingly, received materials that

17   the defendant knew contained visual depictions of a minor

18   engaged in sexual-explicit conduct.

19          And four -- and three, that the producing of that

20   visual depiction involved the use of a minor engaged in

21   sexually-explicit conduct.

22          What I have just told you is only a preliminary out --

23   a preliminary outline -- of the elements of the offenses

24   charged.

25          At the end of the trial, I will give you final

1    instructions on the elements of the offenses charged and all the

2    matters of law, those final instructions will be more detailed,

3    they will guide you reaching your verdict in this case.

4           Mr. Steele is -- has pleaded not guilty to the offense

5    charged in the indictment.  Mr. Christopher Steele is presumed

6    to be innocent.  He starts the trial with a clean slate with no

7    evidence against him.  The presumption of innocence stays with

8    Mr. Christopher Steele unless and until the Government presents

9    evidence that overcomes that presumption by convincing you, the

10   jury, that Ms. Christopher Steele is guilty of the offenses

11   charged beyond a reasonable doubt.

12          The presumption of innocence, members of the jury,

13   requires that you find Mr. Christopher Steele not guilty unless

14   you are satisfied that the Government has proved guilt beyond a

15   reasonable doubt.

16          The presumption of innocence means that Mr.

17   Christopher Steele has no burden or obligation to present any

18   evidence at all or to prove that he is not guilty.  The burden

19   or obligation of proof is on the Government to prove Mr.

20   Christopher Steele is guilty and this burden stays with the

21   Government throughout the entire trial.

22          In order for you to find Christopher Steele guilty of

23   the offenses charged, the Government must convince you that Mr.

24   Christopher Steele is guilty beyond a reasonable doubt.  That

25   means that the Government must prove each and every element of

1    the offenses charged beyond a reasonable doubt.  A defendant may

2    not be convicted based on suspicion, conjecture or surmise, but

3    only on evidence proving guilt beyond a reasonable doubt.

4         Proof beyond a reasonable doubt does not mean proof

5    beyond all possible doubt or to a mathematical certainty.

6    Possibly doubts are doubts based on conjecture or speculation or

7    surmise are not reasonable doubts.

8         The law defines a reasonable doubt as follows:

9         A reasonable doubt is a fair doubt based on reason,

10   logic, common sense or experience.  A reasonable doubt means, a

11   doubt that that would cause an ordinary reasonable person to

12   hesitate to act in a matter or matters of importance of his or

13   her own life.

14        It may arise from the evidence that was presented or

15   the lack of evidence or the nature of the evidence presented.

16   If after considering all of the evidence, you are convinced that

17   the Government has proved Christopher Steele guilty beyond a

18   reasonable doubt, you should return a verdict of guilty.

19   However, if you have a reasonable doubt as to an element of an

20   offense, then you must return a verdict of not guilty.

21        Members of the jury, one last instruction before I

22   call upon the openings.

23        Christopher Steele is charged with three separate

24   offenses, each offense is charged in a separate count -- in a

25   separate count -- of the indictment.  The number of offenses

1   charged is not evidence of guilt and this should not influence

2   your decision in any way.

3          You must separately consider the evidence that relates

4   to each offense and you must return a separate verdict for each

5   offense, for each offense charged, you just decide whether the

6   Government has proved beyond a reasonable doubt that the

7   defendant is guilty of that particular offense.  Your decision

8   on one offense whether guilty or not guilty, should not

9   influence your decision on any other offenses charged, each

10  offense should be considered separately by you.

11         It is four o'clock, members of the jury and my

12  understanding is that the openings will be, probably, between

13  fifteen to twenty minutes per side, so we have enough time to

14  listen to the opening statements.  And then, tomorrow, we will

15  begin with the testimony.

16         Let me give you sort of my -- my schedule and tomorrow

17  it's a little bit different and I will tell you why.

18         My schedule generally, we begin court promptly --

19  promptly -- at 9:00 a.m., so at 9:00 a.m, I want you to be

20  seated right in the jury box, so that we could begin with the

21  testimony and we'll have the first witness all ready on the

22  witness stand waiting for you.  And the witness will be sworn in

23  front of you and we will get started with the case.

24         The lawyers understand that once I get started, I

25  usually take testimony from 9:00 to 11:00 and I will take a

1   break at 11:00 for about fifteen minutes.  And thereafter,

2   generally, I break at 11:00 to 11:15 and then, I will resume

3   till 12:30.  We break for one hour for lunch.  I'm not going to

4   be as generous as I was today, just one hour.  We resume at

5   1:30.  We generally go to five o'clock.  We take a break at 3:00

6   p.m. for about fifteen minutes, so that we could keep the trial

7   moving.

8           So, we put in a lot of time and the lawyers are aware

9   of that and they will have witnesses ready for you, so that you

10  do not waste your time.

11          Tomorrow is a little bit of an exception, because I

12  may be called upon to -- between 11:00 and 11:30, I don't know

13  exactly, when -- but between 11:00 and 11:30, you will see

14  somebody give me a nod, because I have to go to a pretty

15  important meeting with some of my colleagues and we have people

16  from Washington, D.C., that are here on very important business

17  and they need to talk to a few of our federal judges, including

18  me.  So, I will be with my other colleagues at a meeting and we

19  don't know exactly, when they're going to get here.

20          So, I will probably go to 11:00 or 11:00 -- passed

21  11:00 until they call me and then, we'll take a break.  The

22  break may be for fifteen minutes, it may be for a little longer.

23  My staff will keep your posted.  So, tomorrow is a little

24  different and we will sort of keep you posted.

25          That's pretty much the schedule and we anticipate that

1   you will have the case before Friday, I keep saying that, but

2   I'm pretty comfortable that you will probably have all of the

3   testimony in, no later than, either, probably Wednesday morning

4   or Wednesday afternoon and we're in a position to close, either,

5   Thursday or earlier than that.  So, I might be wrong, but I'm

6   not in doubt.  So, you will be done with the case by Friday.

7           With that, I am going to call upon the Government to

8   give you the opening statement, the Assistant United States

9   Attorney, Michelle Rotella.

10          MS. ROTELLA:  Thank you, your Honor.

11          THE COURT:  You're welcome.

12              <u>GOVERNMENT'S OPENING STATEMENT</u>

13          MS. ROTELLA:  Ladies and gentlemen, there is a --

14  there is a fear that is shared by virtually every parent of a

15  teenaged child that, because almost every teenager has a cell

16  phone, an iPad or a laptop computer and the fear that every

17  parent has is that, their child is going to come across somebody

18  on the Internet, an adult, who is looking to take advantage of a

19  teenager.

20          Well, you will hear, that in this case, for the

21  parents of the fourteen-year-old boy, who was victimized, their

22  fear became their reality, when he met this defendant,

23  Christopher Steele over the Internet.

24          It would appear that the case stretches back to around

25  the spring of 2013, a little over a year ago.  And you will

1   hear, that the fourteen-year-old boy in this case, realized at

2   that point -- he had just turned fourteen -- and he realized

3   that he was gay.  You'll hear, he came out this year and they

4   were supportive of him.

5           But you'll also hear that at fourteen, though his

6   parents supported him and he could talk to them, he still felt

7   very alone.  And so, he did what many teenagers do today, he

8   turned to the Internet to see if he could find somebody that he

9   could make contact with, somebody who was like him.

10          And what you'll hear, ladies and gentlemen, is that

11  one of the things that he found on the Internet was a cell-phone

12  application called, Jack'd, it was a social-networking site

13  that's for homosexuals.

14          It's kind of like, Facebook, where you can create a

15  profile for yourself and upload your picture if you want, you

16  can give details about yourself, your likes, your hobbies, your

17  dislikes.  You can also look for other people on the Jack'd

18  cell-phone application, they also have profiles on there.  And

19  if you want to have contact with someone, you can message back

20  and forth.

21          So, what you'll hear is, around the summer of 2013,

22  the victim in this case created a profile for himself.  Now,

23  Jack'd requires -- like, some of the other social-networking

24  sites -- Jack'd requires you to be eighteen years of age. So,

25  you'll hear that the victim created a profile, that he

1    represented that he was eighteen years old at the time.

2          However, what he will explain to you is that when he

3    met this defendant online, he immediately told him, that he was

4    just fourteen years old.

5          You'll hear that when the victim found himself on this

6    Jack'd cell-phone application and he found this person, who he

7    knew by the name of Mike Dozer, that's an alias that he's

8    charged in the indictment with here today.  He saw him on the

9    Jack'd cell-phone application and you'll hear the victim tell

10   you, that he was excited.

11         Because what you'll learn in this case is that,

12   Christopher Steele going as -- under the name of Mike Dozer --

13   had just started a career in the porn industry, that he was an

14   actor in some porn films.

15         And so, when the victim came across him on this Jack'd

16   cell-phone application, he was excited that somebody like the

17   defendant would ever want to talk to a fourteen-year-old boy

18   like him.

19         And so, you'll hear that from the very beginning --

20   the very first parts of their conversation -- this defendant

21   asked the victim to have sex with him, it was probably the third

22   thing he said to him online:

23         I want to have sex with you, are you really eighteen

24      years old?

25         You hear that the victim was truthful:

1          Well, you caught me, no, I'm only fourteen.

2          And his answer is part of the reason why we're here

3     today, because what you will hear is that the defendant then,

4     said:

5          I don't care, if you're eighteen years old, I like

6          my guys young and (indiscernible).  But I still want to

7          have sex with you.

8          You will hear that conversation, because the victim

9     will come in and he will testify to it.  But you will also see

10    that conversation, the exact words that were used by the victim

11    and the exact words that were used by this defendant, because

12    you will hear that when the police got involved in this

13    investigation, they captured that conversation, which was online

14    and over the Internet.  So, you'll get to see where the victim

15    told him, he was fourteen and he still said, he wanted to have

16    to sex with him.

17         So, you will hear the defendant wasted no time,

18    because the very next day, this thirty-three-year-old man

19    traveled from his house in Delaware, where he still lived with

20    his mom and his dad in Pennsylvania to the victim's home.

21         You'll hear it was during the week, during the day, so

22    the victim's parents were both working.  The defendant got up

23    bright and early and traveled to the victim's home, he met, they

24    went into the victim's bedroom and you will hear that they had

25    oral sex and that the defendant performed anal sex on that

Ms. Rotella - Opening Statement                              61

1    fourteen-year-old boy, all without any protection, whatsoever

2    and so, the defendant left.

3           And then, we flash forward a couple of months, because

4    now the victim is starting to have some problems at home.  He's

5    normally close with his parents, now, he's detached, he's not

6    speaking with them and they know, something is wrong with their

7    son, but they don't know what it is.

8           So, you'll hear one night, the victim's father, took

9    his iPad, took his cell phone and looked through it to see if he

10   could find out what was going on with his son.  And what he

11   found was that conversation, I told you about.  A grown man

12   talking to his son, his son, telling him that he's fourteen

13   years old and the grown man saying, I don't care, I'm still

14   gonna have sex with you.

15          And so, he confronted his son and his son told him

16   what happened and then, they went to the police.

17          You'll hear they went and first met with Detective

18   Ernie Morris, who will testify in this case.  The victim and his

19   dad brought up the iPad and the cell phone.  Detective Morris

20   captured a screenshot of that conversation, so that's what

21   you'll see here, that I've spoken to you about.

22          But at that point in time, they still only had his

23   identity as Mike Dozer and they knew he was around thirty-two

24   years of age, he lived in Delaware, he worked in the porn

25   industry.

Ms. Rotella - Opening Statement                              62

1          So, you'll hear a little bit about how they identified

2    Mike Dozer as Christopher Steele, by e-mail records, by cell-

3    phone records and eventually, they obtained his true name and

4    his true address in Delaware.

5          And you'll hear that Detective Morris put together,

6    what was called a photo array, which is eight photographs of

7    people, who all resemble this defendant, similar backgrounds.

8    And he had the victim take a look at it to make sure, that the

9    person, he was describing, the person he met with, is the same

10   person that the police have now identified.

11         And what you'll hear is, that the victim, immediately,

12   picked out this defendant's picture, as the person he had

13   corresponded with over the Internet and is the person, who had

14   come up to his house and has sex with him.

15         So, Montgomery County issued a warrant for Christopher

16   Steele's arrest.

17         You will hear on December 13th of 2013, in the morning

18   hours, they traveled to Delaware, they worked with other police

19   officers from Delaware and with federal agents from Homeland

20   Security.  They had an arrest warrant for Christopher Steele and

21   they also has a search warrant.

22         And you'll hear that he was arrested that morning

23   right outside of his house.  The police confiscated his cell

24   phone.

25         And they also found in the house, the substance that

1  -- that you will hear referred to in this case, as coppers or

2  poppers, it's a little brown bottle that was found in the

3  defendant's room, that the defendant had the victim sniff just

4  before they had sex, because he told him it would enhance his

5  sexual pleasure.  They confiscated that out of the defendant's

6  bedroom.

7          You'll hear from some witnesses in this case, that

8  there was a forensic examination that was done of the victim's

9  cell phone -- excuse me, not the victim -- of the defendant's

10 cell phone that was taken from his person at the time of his

11 arrest.

12         You'll hear, found on his cell phone, a sexually-

13 explicit picture that the victim had sent to him, on his cell

14 phone, four months after it was sent to him by the victim.

15         But what you will also hear in this case, ladies and

16 gentlemen, is the defendant's confession.  Because you'll hear,

17 he was brought back to the police station in Delaware he was

18 given what we call, his <u>Miranda</u> rights, he had the right to

19 remain silent, he had the right to an attorney, he was given

20 that on a preprinted form, that had everything spelled out and

21 that had a portion saying, would you like to waive your rights

22 at this time?  And he signed, that he would like to waive his

23 rights and give a statement to the police.

24         His confession ladies and gentlemen, we're going to

25 give to you, so you will see him reading the card, signing the

1    card.  You will see the police, verbally, telling him his rights

2    and him telling the police, that he wished to waive his rights

3    and he wished to speak with the police at that time.

4            And then, ladies and gentlemen, you will hear him

5    confess on the statement, that he knew that the victim was

6    fourteen years old before he ever traveled to Pennsylvania, that

7    he had oral sex with that boy that day, that he had anal sex

8    with that boy.  And that he gave him the popper substance that

9    the police took from his house.  And all of it is on videotape.

10           And so, you will hear that he has been indicted, the

11   Judge explained some of -- a little bit -- of the charges that

12   you will be called upon to decide at the end of this.

13           And so, you know what evidence to look for as you hear

14   the testimony and see the exhibits that come before you.

15           The first charge that's been referred to is,

16   enticement, that he used the Internet, the Jack'd cell-phone

17   application to entice this fourteen-year-old boy to engage in

18   some kind of sex.  You'll hear the victim tell you that, you'll

19   hear the defendant confess to that on videotape and you'll see

20   the capture of the chat, itself, where he tells him:

21           I want to have sex with you.

22           The second count of the indictment charges him with

23   traveling with the intent to engage in some kind of sexual

24   conduct.  You'll hear the victim tell you, that's what he did.

25   You'll hear the defendant confess, that's what he did.  You'll

1   see the chat.

2        And the third count charges him with receiving child

3   pornography, because what you will hear is that the photo -- the

4   sexually-explicit photograph -- was sent by the victim over the

5   Jack'd cell-phone application.

6        You'll also hear as part of this case, that we've

7   subpoenaed records from Jack'd, which is an overseas company and

8   they returned images to us that were contained on the

9   defendant's Jack'd cell-phone application.  And among them, was

10   a different image, a second image, a sexual-explicit image of

11   the same thing.

12        So, at the end of this case, ladies and gentlemen,

13   after you've heard the testimony, seen all of the evidence, I

14   will come back again before you and I will ask you to return a

15   verdict that holds Christopher Steele responsible for what he

16   did to that fourteen-year-old boy.  I am going to ask you to

17   find him guilty.

18        THE COURT:  Mr. Wray.

19        MR. WRAY:  Thank you, your Honor.

20               DEFENDANT'S OPENING STATEMENT

21        MR. WRAY:  Good afternoon -- late afternoon -- ladies

22   and gentlemen of the jury.

23        My grandmother used to say, the thing is in the

24   details, which is important in jury trials, because often --

25        (Mr. Wray is not speaking at a microphone through the

1    opening statement.)

2         MR. WRAY:  -- like in a -- we put our best foot

3    forward.  There are a lot of details that when they come in to

4    play here, that you're going to hear, those details will give

5    you a broader view of what occurred and what didn't occur and

6    what is provable and what is not provable in the course of this

7    case.

8         There are number of police witness that you will hear

9    from, you'll hear from a number civilian witnesses as well.

10   That's about as bad as it gets, there's no pretend and it's --

11        But understand, that our legal system is premised upon

12   one and only one thing, presumption of innocence and throughout

13   this trial, just as the Judge has already told you, my client

14   has the right to that presumption.  You must presume him

15   innocent all the way to the end of the case until you're told to

16   deliberate.  You must keep that in your mind the entire time.

17        It is not my function nor is it my client's function

18   to build a small building of bricks and say, this is the proof

19   that my client is innocent.

20        This is the proof -- the big under -- to protect

21   myself from the Government -- to say, he's not guilty.  And I do

22   not -- anything that the Judge has already told you.  They have

23   to build their case.

24        And the Judge told you at the very beginning of every

25   case, just like when you publish a newspaper, you start with --

1    there is no evidence here.  They have to build a case to present

2    evidence and build the case.

3              I will tell you one thing that will come in the course

4    of this case, there is a person named, Mike Dozer.  And Mike

5    Dozer is a porn star.  And Mike Dozer became a porn star, the

6    end of May of 2013 and prior to approximately, May 28th, Mike

7    Dozer did not actually exist.

8              He made many movies, he made about sixteen movies.

9    But the Mike Dozer that made movies is not Mr. Steele and you

10   will hear evidence and testimony to that effect.  But that in

11   the pursuit of this pornography -- porn career in adult films is

12   a legal business, he was Mike Dozer while he made those films.

13             You will hear testimony that Mr. Steele was working

14   full time for an industrial fumigation business.  He worked for

15   a business where they would go in on weekends to warehouses,

16   office buildings and fumigate buildings to get rid of all the

17   bugs and what not that are in buildings and that he worked that

18   job full time.

19             And part time, he pursued a career in adult films and

20   was -- he's successful at it and you'll hear testimony about

21   that.

22             And you'll also hear testimony that Mike Dozer is on

23   the Internet a lot, his pictures are all over the Internet, he

24   has a Twitter account, he has a Facebook account and you'll hear

25   testimony that those were used to push and -- push his career --

1  to sell -- sell videos of his adult-film life.

2          You'll also hear testimony that that image is wildly

3  held.  And as the Government has pointed out, you will hear

4  testimony about this Jack'd system.  Jack'd is a cell-phone only

5  application, it only operates on cell phones.  You will hear

6  testimony how it operates, how it works, the victim will tell

7  you how it works.  Mr. Steele will tell you how it works.

8  Because it includes that round and you can test messages back

9  and forth.  And that -- whether a person tells you, they are,

10 they are on that.

11         If you say -- if you're under eighteen -- you can get

12 onto Jack'd, it does not say, it's only for adults, as the

13 Government has already told you, even if you're underage, you

14 can pretend to be an adult.

15         Through their testimony -- and from Mr. Steele --

16 that, yes, he did have one conversation with the victim.  And

17 you will hear testimony that he catfished him, pretended to be

18 in to younger boys.  And as soon as the admission came, that

19 this was an under-aged male, Mr. Steele -- you'll hear testimony

20 -- that he blocked him and he never spoke with him again.

21         There is a lot of evidence you'll need to hear here.

22 Like the victim in this matter, you will need testimony from Mr.

23 Steele that he is gay, he is a homosexual.  You will hear

24 testimony that he in a full-time relationship with someone and

25 like, all relationships, it had its ups and downs and you'll

1    hear all of the details of that.

2           And after you hear all of that evidence, you will

3    understand, why my client confessed, pure and simple.

4           I know this case is hard, I know all of your probably

5    sat here and guessed, what is this case about?  Openings

6    statements, pretty much are the opening book flap for a case,

7    the opening book flap said, oh, this is what the book is about.

8    This is going to be hard, this will be hard stuff to hear.

9           And the whole time you hear it, as difficult as it is,

10   as difficult as -- my client has to find, the slightest

11   presumption of innocence.  I need you to listen to all of that

12   testimony very carefully.  These are common-sense, real life's

13   experience.

14          And I'd ask you to do more than just that, I'm going

15   to ask you to sit there and say, is this real evidence or is it

16   something else?0

17          And when, we're done, I'm going to ask you to acquit

18   Mr. Steele.  I'm going to ask you to acquit him of crossing

19   state lines, of enticing the victim in this matter and of the

20   child-pornography charges.  Because as this case proceeds, I

21   will do my job and I expect you to do your job to see that that

22   building of guilt cannot be made.

23          I know it's been a long day.  I implore you, you just

24   keep an open mind here.  You must not make decisions right now.

25   You must not drawn your conclusions.  You must not let your

Mr. Wray - Opening Statement                                70

1    biases -- human frailties -- come in to play here.

2           You must throughout this trial, respect and protect my

3    client's presumption of innocence from beginning to end until

4    the Judge says, it's time to deliberate, you may not for even a

5    moment say, well, that's it, I've heard enough, you must not.

6           Our legal system insists upon it and it's what my

7    client has been promised by our constitutional system.  It's

8    been a long day.  Thank you very much for your kind attention.

9           THE COURT:  Very well.

10          Members of the jury, it is, approximately, 4:29, so I

11   am going to give you some admonitions and I'd ask that you'd

12   keep them in mind as you begin with your role as jurors in this

13   case.

14          Keep in mind, that your job is to keep an open mind,

15   do not make up your mind about the verdict until you have heard

16   all of the evidence in this case, I give you the final

17   instructions about the law at the end of the trial.  And you

18   have had an opportunity to discuss the evidence with each other

19   in the jury room during your deliberations.

20          From now on, do not discuss the case among yourselves

21   until the end of the trial, when you go back into the jury to

22   begin your deliberations in an effort to render a verdict in

23   this case.

24          You need to allow each juror, the opportunity to keep

25   an open mind throughout the entire trial, so during the trial,

1    you may talk to your fellow jurors about anything else of a

2    personal nature or of comment interest, but not under any

3    circumstance are you to talk to them about or comment about the

4    testimony that you are listening to or the evidence that you are

5    considering.

6           During the trial, you should not speak to any of the

7    parties, any of the lawyers or any witnesses involved in this

8    case, not even to pass the time of day.  If anyone -- a lawyer,

9    a party, a witness -- does not speak to you when they see you in

10   the hallway or ride with you in the elevator or the like and

11   like I said before, they're going to avoid doing that, remember,

12   it is because they are not supposed to talk to you or visit with

13   you, either, because that could create serious problems for this

14   Court.

15          Do not talk with anyone else or listen to others talk

16   about this case until the trial has ended and I have discharged

17   you as members of the jury in this case.  It is important, not

18   only that justice is done in this case, but that you give the

19   appearance of doing justice.

20          If anyone should try to talk to you about the case

21   during the course of the trial, I am going to direct that you

22   report it to me, immediately, through my Courtroom Deputy, Ms.

23   Wertz, who you've already met, so that I could take appropriate

24   steps to make sure that both sides get a fair and adequate

25   consideration of the evidence.  And if that happens, do not

1   discuss the situation with your other fellow jurors.

2        Do not discuss this case with anyone outside of the

3   courtroom or at home, including your family and friends.  You

4   may tell your family, your friends, that you have been selected

5   as a member of the criminal trial jury in this case.  And you

6   may even tell them, that you think it's going to take,

7   approximately, a week to try the case.  However, you should also

8   tell them, that I instructed you not to talk to them any more

9   about the case and that you should not talk to them any further

10  about it.

11       The reason is, that sometimes, someone else's ideas or

12  thoughts can influence yours.  And your thinking should be

13  influenced by nothing else, other than what you learn here in

14  the courtroom when we are all together.

15       Until the trial is over and your verdict is announced,

16  do not watch or listen to any television or radio news programs

17  or reports about this case or read any news stories or Internet

18  stories or articles about the case or anyone connected with it,

19  either.

20       And again, this sounds repetitious, but I am going to

21  repeat it throughout the trial, because it is really important,

22  especially, in light of the fact that you've heard during the

23  opening statements, that the lawyer has made reference to the

24  Internet, Twitter accounts and Facebook accounts and web page

25  profiles, et cetera.

1            So, do not be tempted at all, do not use a computer, a

2    cellular phone or other electronic devises or other tools of

3    technology, while the courtroom or -- in the courtroom -- or

4    during deliberations.  These devices may be used during breaks

5    or recesses, only for personal uses, only for personal uses.

6    But may not be used to obtain information about this case from

7    any outside source or for you to send out information to the

8    world or disclose information about this case or any of the

9    issues in this case to the world.

10            So, it is important that you heed my instructions, you

11   may not communicate with anyone about this case on your cell

12   phone, through your e-mails, Blackberry, iPhone, text messaging

13   or on Twitter through any blog or website through any Internet

14   chat room or by way of any other social networking websites,

15   including Google, Facebook, My Space, Linked-In and YouTube.

16            And you may not use any similar technology or social

17   media, even if I have not specifically -- specifically mentioned

18   it in these instructions.

19            Also, remember, do not conduct research or make an

20   investigation of your own about any matters relating to this

21   case or this type of trial.  And this means, for example, that

22   you must not visit the scene, conduct any experiments of any

23   kind, consult any reference work or dictionaries or search the

24   Internet websites or blogs for any additional information or use

25   a computer, a cellular phone or other electronic devices or

1    tools of technology or any other method, to obtain information

2    about this case, this type of case, the parties in this case or

3    anyone involved in this case.

4            Do not try to find out information from any source

5    outside the courtroom.  The information you need to decide this

6    case, will be presented to you in the presence of the Court and

7    the Government and the defendant.

8            So, please, do not try by any way, means -- or any

9    other means -- to supplement your knowledge about any of the

10   issues in this case or this type of case or find out additional

11   information.  So, do not be tempted, because that could create

12   serious problems for this Court.  Again, it would be improper

13   for you to supplement your knowledge about this case on your

14   own.

15           And finally, like, I said before, do not concern

16   yourselves with or consider the possible punishment that may be

17   -- that might be imposed, if you return a verdict of guilty in

18   this case.

19           In a few minutes, I am going to dismiss you and I need

20   to speak to my Deputy for one minute, before I dismiss you.  So,

21   Ms. Wertz, could you come to the side?

22           (Discussion held off the record at 4:33 p.m.)

23           THE COURT:  Right.

24           So, members of the jury, one last thing.

25           We are going to give you, sort of a tentative

1   schedule, we usually go from 9:00 to 5:00.  Tuesday and

2   Wednesday, I will only go till 4:30.  Thursday, if we need to,

3   it will be from 9:00 to 4:30 as well.  And Friday, it will be

4   from 9:30 till 5:00, if we need -- if we need Friday, if we need

5   to come back Friday.  So, that's the tentative -- the tentative

6   schedule that I will put out.

7          And remember, I said, that tomorrow between 11:00 and

8   11:30, I may have to take a break a little bit earlier.

9          My -- my Courtroom Deputy will distribute the schedule

10  to you, but I really need you to be here, promptly, at 9:00

11  a.m., 9:00 a.m.

12         I get here at seven o'clock in the morning and I come

13  from about an hour and a few minutes away, so I need you to get

14  here on time, so that we could get this case done in this week.

15         With that, I am going to direct my Courtroom Deputy,

16  Ms. Stacy Wertz to take you to the jury room.  Have a nice

17  evening and I will see you here promptly tomorrow at 9:00 a.m.

18  Okay.

19         ESR OPERATOR:  All rise.

20         (Jury out at 4:35 p.m.)

21         THE COURT:  Okay.

22         Anything I need to do -- we have a few minutes --

23  anything I need to do right now?

24         MS. ROTELLA:  Sir, because I think that, perhaps, I

25  may end up finishing tomorrow, I was planning on putting the FBI

1    agent on.

2         There is a -- there is also a person from AT&T which I

3    neglected to mention, he's -- I mean, those are the two

4    witnesses, that would be called and neither is an expert witness

5    for the cell-site information.

6         THE COURT:  Could you -- is there a stipulation, is it

7    a custodian?

8         MS. ROTELLA:  He's -- it's not a custodian, but he

9    would testify as to the location of the cell-phone towers.  I

10   mean, he's not -- either one or the other is necessary as a

11   witness -- a lay witness --

12        THE COURT:  All right.

13        MS. ROTELLA:  -- we don't ordinarily, necessarily,

14   need both.

15        But your Honor did not issue your final ruling on

16   that, so --

17        THE COURT:  No, I am going to put it out in the

18   morning.

19        MS. ROTELLA:  Oh, okay.

20        THE COURT:  I've been a little busy --

21        MS. ROTELLA:  The only -- I know, you have.

22        THE COURT:  -- trying to move the case.

23        MS. ROTELLA:  I know, sir.

24        I -- I just didn't know if I -- so, I'll have him

25   prepared to be here then and I'll just wait to hear what you

1   have to --

2           THE COURT:  Okay.

3           MS. ROTELLA:  -- say.

4           THE COURT:  Very well.

5           MS. ROTELLA:  Thank you.

6           THE COURT:  I'll try to give you a ruling on it by --

7   by 8:30 tomorrow morning.  Yes?

8           MR. WRAY:  I'll wait to hear what the Court's ruling

9   is.

10          It was my impression that the Court may give me some

11  latitude on cross-examination for a mini-Dalbert, if --

12          THE COURT:  I -- I --

13          MR. WRAY:  -- not on direct, but I was unsure.

14          THE COURT:  -- I -- on the Government's -- on the

15  Government's proposed witness, I think the Third Circuit Court's

16  decision and the decisions across this country are pretty clear.

17  I am pretty comfortable that I am not going to give you a

18  Dalbert hearing, because I don't think you're entitled to one.

19          And the other thing is, I'm pretty comfortable that

20  they are calling him or her as a -- a fact witness with -- with

21  regards to lay -- lay opinions and that's permissible, what they

22  intend to do.  So, I am likely to allow that testimony to be

23  presented.

24          So, I'm pretty clear that, I think the Government is

25  going to be able to present their witness.

1        What I have not ruled on is his request for an expert

2    on his case, that I'm taking it under advisement, understanding

3    that your objection is that, he has notified you very late in

4    the game as to the name of the witness.

5        But I am not so sure, if he's calling an expert or

6    just a fact witness for the same thing, in which case, you know,

7    I don't know whether you -- you have a point, because what is

8    good for you is --

9        MS. ROTELLA:  Well --

10       THE COURT:  -- probably, good for them.

11       MS. ROTELLA:  -- no, no.

12       And I understand that, but the witness in this case

13   will testify, it's a totally separate type of information.

14       I -- I would just ask, if he's going to offer him then

15   as a fact witness, I -- it's still unclear to me -- but if he

16   offers him as a fact witness, I'm not certain how a person, who

17   is employed in some corporation is going to be able to testify

18   as to how the Jack'd works --

19       THE COURT:  All right.

20       MS. ROTELLA:  -- when he's never been employed by

21   Jack'd.  It's a business that's owned overseas, I ---

22       THE COURT:  Very well.

23       MS. ROTELLA:  -- all of those things.

24       THE COURT:  Okay.

25       MS. ROTELLA:  I don't know that he's set -- can set a

1   proper foundation to have anything admitted through that

2   particular --

3           THE COURT:  Well, the rule --

4           MS. ROTELLA:  -- witness.

5           THE COURT:  -- said, you could test -- you can -- if

6   -- if he meets the predicate of the rule, then it may be

7   admissible --

8           MS. ROTELLA:  Yes.  But --

9           THE COURT:  -- but he has to demonstrate that.

10          I -- I -- if you want you know, you might want to

11  proffer on the record, what is it that you want, if -- if you

12  know.

13          MR. WRAY:  Ah, I will need to consult with Mr. Wentz,

14  but I believe that I -- the testimony that I need from him, can

15  be elicited through Rule 1006, simply, summarizing how that the

16  application collects and -- and -- I'm not a hundred percent

17  sure.  I may not even call him, Judge at this point.

18          THE COURT:  All right.

19          MR. WRAY:  So --

20          THE COURT:  Before he testifies then -- before

21  anything -- we'll recess and talk about it.

22          But if you decide not to call him, let the Government

23  know, so they don't have to waste their time as soon as

24  possible.

25          MR. WRAY:  Of course.

1              THE COURT:  Fair?

2              MS. ROTELLA:  Thank you, your Honor.

3              THE COURT:  All right.

4              He's not going to testify, unless you let us know

5     whether you -- what -- what areas he's going to cover.

6              If you make that decision, let the Government know --

7              MR. WRAY:  I'll --

8              THE COURT:  -- you don't intend to call him, as soon

9     as possible, so that we don't have to waste our time.

10             MR. WRAY:  I will, your Honor.

11             THE COURT:  Fair?

12             MR. WRAY:  Fair enough.

13             THE COURT:  All right.  Good.

14             If you need to bring it to my attention, I will be

15    here tomorrow at seven o'clock.

16             MS. ROTELLA:  Thank you, sir.

17             THE COURT:  Again, I said, 8:30, if you need anything

18    for me to discuss, 8:00 -- eight o'clock.  I am usually here,

19    but you've got to let me know the day before, I am usually here,

20    so I will be make myself available.

21             Do you have anything for me tomorrow or do I -- can I

22    go running with my -- my colleague, Judge Rice?

23             MS. ROTELLA:  Feel free to run, your Honor.

24             THE COURT:  All right.

25             You don't need me in the morning at 8:30, right?

1          MR. WRAY:  Not unless I hit a truck on my way in,

2     Judge.

3          (Adjourned in this matter at 4:40 p.m.)

4                         * * *

                    I N D E X
_____
_____

          (The *voir dire* of the jury is not transcribed at this
          time.)


                         * * *


                                              PAGE

          Opening Instruction of the Court    20
          Opening Statement - Ms. Rotella     57
          Opening Statement - Mr. Wray        65



                         * * *

                 C E R T I F I C A T E

     I do hereby certify that the foregoing is a correct

transcript of the electronic-sound recording of the

proceedings in the above-entitled matter.




_____        Date: February 20, 2016
Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey  08035
(856) 546-6270